GERALD D LIBERSAT ET AL        CASE NO. 6:19-CV-00421

VERSUS        JUDGE SUMMERHAYS

SUNDANCE ENERGY INC ET AL        MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

The present matters before the Court are two motions to dismiss: (1) Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Transfer filed by defendants SEA Eagle Ford LLC and Sundance Energy Inc. ("Sundance/SEA Eagle Motion to Dismiss") [Doc. 8], and (2) Motion to Dismiss for Lack of Jurisdiction filed by defendant Noble Energy Inc. ("Noble Motion to Dismiss") [Doc. 23].[1] As the Court further explains below, the Sundance/SEA Eagle and Noble Motions to Dismiss are GRANTED and the claims against Sundance, SEA Eagle, and Noble Energy are DISMISSED without prejudice on the grounds that the Court lacks personal jurisdiction over these defendants.

## I.
### BACKGROUND

This case involves a dispute over royalties paid pursuant to a Texas mineral lease. This lease was obtained by Clayton W. Williams and was signed on or about April 2, 1984 by the Louisiana-based lessors, May G. Libersat, Gerald D. Libersat, Rodney J. Libersat, and Donald J. Libersat (the "Libersat Lease").[2] The Libersat Lease covers 269.97 acres in McMullen County,

---

[1] The Court will refer to Sundance, SEA Eagle, and Noble Energy collectively as the "Moving Defendants."
[2] Exhibit A to the Sundance/Sea Eagle Motion to Dismiss

Texas and was recorded in the McMullen County deed records.[3] Williams traveled to Louisiana to meet with the lessors and negotiate the terms of the lease.[4] The lease was subsequently assigned to Clayton Williams Energy, Inc., and then to Eagle Ford Shale Exploration, LLC ("Eagle Ford Shale").[5] Eagle Ford Shale assigned its interest in the lease to defendant SEA Eagle Ford, LLC in 2014 and the assignment was recorded in the deed records of McMullen County, Texas.[6] SEA Eagle is a Texas limited liability company with its principal place of business in Denver, Colorado. Sundance is SEA Eagle's sole member.[7] Unlike SEA Eagle, Sundance owned no interest in the Libersat Lease nor is it an operator of any of the three wells on the leased land.[8] Sundance's role with respect to the Libersat Lease is the coordination of royalty payments.[9] Sundance is a Colorado corporation with its principal place of business in Denver, Colorado.[10] Defendant Noble Energy is a Delaware Corporation with its principal place of business in Houston, Texas.[11] Plaintiffs allege that Noble Energy acquired (and is the successor to) defendant Clayton Williams Energy.[12]

Following the lease assignment, SEA Eagle obtained a title opinion identifying the royalty interests under the Libersat Lease as follows:[13]

| Owner | Interest |
|---|---|
| Gerald D. Libersat | 1/3 |
| Dorothy M. Libersat | 1/6 |

---

[3] *Id.* Specifically, the lease was recorded at Volume 230, page 77 of the county deed records.
[4] Complaint at ¶¶ 3, 4 [Doc.1-1].
[5] Exhibit B to the Sundance/SEA Eagle Motion to Dismiss [Doc. 8-3].
[6] *Id.*
[7] Affidavit of Michael M. Wolfe ("Wolfe Affidavit"), Exhibit D to Sundance/SEA Eagle Motion to Dismiss [Doc. 8-5].
[8] *Id.* at ¶ 23.
[9] *Id.* at ¶ 24.
[10] *Id.* at ¶ 1.
[11] Declaration of Taylor Pullins ("Pullins Declaration"), Exhibit 1 to the Noble Motion to Dismiss [Doc. 23-2].
[12] Complaint at ¶ 1(G)
[13] Complaint at ¶ 12; Exhibit C to Sundance Motion [Doc. 8-4].

| | |
|---|---|
| Defendant Roxanne Marie Gilton | 1/4 |
| Judy Granger Broussard | 1/12 |
| Defendant Mark Libersat<br>(Includes the apparent 1/12 interest<br>of Denise Libersat, deceased) | 1/6 |

Sundance then sent division orders to these owners reflecting the ownership interests from the title opinion, including plaintiff Gerald Libersat.[14] Two of the owners identified in the title opinion, Roxanne Gilton and Mark Libersat, signed their division orders and Sundance commenced royalty payments pursuant to those division orders.[15] Plaintiffs contend that Gerald Libersat never signed his division orders.[16] In 2018, Gerald and Julie Libersat notified SEA Eagle and Sundance that the ownership percentages reflected in the title opinion and division orders were incorrect. Plaintiffs contend that the title opinion and the division orders were incorrect because SEA Eagle and Sundance failed to research the record title and thus "knowingly and intentionally breached their obligations under the lease by diverting [plaintiffs'] revenues to third persons."[17] According to Plaintiffs, SEA Eagle and Sundance conducted further research and suspended payments to owners who had inherited their ownership interests through May Guidry Libersat, one of the original lessors.[18] SEA Eagle and Sundance subsequently sent revised division orders to Plaintiffs. Plaintiffs allege that these revised division orders failed to address the erroneous payments made under prior division orders.[19] According to Plaintiffs, SEA Eagle and Sundance then notified Plaintiffs that payments due under the Libersat Lease would be withheld unless Plaintiffs

---

[14] Exhibit C to Sundance/SEA Eagle Motion to Dismiss at ¶ 8 [Doc. 8-4].
[15] *Id.* at ¶ 9.
[16] Complaint at ¶ 15.
[17] *Id.* at ¶ 17.
[18] *Id.* at ¶ 20.
[19] *Id.* at ¶ 22.

indemnified them for the erroneous royalty payments that were distributed under the prior division orders.[20]

SEA Eagle filed a petition in the 156th Judicial District Court, McMullen County, Texas against Mark Libersat and Roxanne Gilton, the two royalty owners under the Libersat Lease who received royalties erroneously as a result of the original division orders.[21] In that case, SEA Eagle and Sundance assert claims for breach of contract and unjust enrichment, and request injunctive relief freezing the erroneous royalty payments to these owners.[22] The contract and unjust enrichment claims are based on representations in the signed division orders confirming Mark Libersat's and Roxanne Gilton's ownership interests as well as an agreement to indemnify SEA Eagle and Sundance for any payments made pursuant to the division orders.[23] Five months later, Gerald Libersat and Julie Libersat filed a petition in the 15th Judicial District Court, Vermilion Parish, Louisiana, Docket No. 106342-J, against SEA Eagle, Sundance, Thomas B. Moore, Robert L. Graham, T. M. Shepard, John H. Sowell, III, Clayton W. Williams, Jr., Clayton Williams Energy, Inc., and Noble Energy, Inc.[24] Plaintiffs allege that Sundance and SEA Eagle breached their obligations under the Libersat Lease and acted in bad faith by erroneously calculating their royalty interest based on a title opinion that, according to Plaintiffs, they knew or should have known was erroneous. Plaintiffs further allege that Sundance and SEA Eagle breached the lease by paying their royalties to other interest owners and then refusing to make any royalty payments to Plaintiffs unless they agreed to indemnify them for the prior erroneous payments.[25] As far as Moore, Graham, Shepard, and Sowell, these defendants are alleged to be "working interest or

---

[20] *Id.* at ¶ 25.
[21] *SEA Eagle Ford, LLC v. Mark Libersat and Roxanne Gilton*, No. 18-0046-CV-B (156th District Court, McMullen County, Texas filed Oct. 14, 2018), Exhibit C, Sundance/SEA Eagle Motion to Dismiss [Doc. 8-4].
[22] *Id.* at ¶¶ 19-24.
[23] *Id.* at ¶¶ 17, 20.
[24] Complaint at ¶¶ 1A-1G [Doc. 1-1]. This Vermillion Parish action was filed March 1, 2019.
[25] *Id.* at ¶¶ 14-15, 22-23, and 29.

overriding royalty owners and [assignees] of Clayton W. Williams, Jr."[26] The Complaint does not

allege any actions by the Individual Assignees with respect to the Libersat Lease or how these

defendants caused harm to Plaintiffs. With respect to the other defendants, Plaintiffs merely allege

that "[a]t this time petitioners have no information that defendants, Clayton W. Williams, Jr.,

and/or Noble Energy, Inc., have breached their obligation to perform in good faith as a prudent

operator, but are necessary parties to this action."[27] SEA Eagle and Sundance removed the case to

federal court on April 3, 2019 on the grounds of diversity jurisdiction under 28 U.S.C. § 1332.[28]

SEA Eagle and Sundance then filed the Sundance/SEA Eagle Motion to Dismiss seeking dismissal

under Rules 12(b)(1) and 12(b)(2) on the grounds that the court lacks personal jurisdiction over

SEA Eagle and Sundance and, in the alternative, that the "Local Action Doctrine" precludes a

federal court in Louisiana from hearing a case involving real property interests located in Texas.

Noble Energy subsequently filed the Noble Motion to Dismiss arguing for dismissal on the same

grounds as the Sundance/SEA Eagle Motion to Dismiss. Plaintiff Gerald Libersat died on

November 4, 2019, and the court granted an unopposed motion to substitute the testamentary

executor of his estate, Charles E. Scarbrough, as a plaintiff in this matter.[29]

## II.
### PERSONAL JURISDICTION

## A. The Relevant Standards

The present case was removed based on diversity jurisdiction under 28 U.S.C § 1332. In

a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant

---

[26] *Id.* at ¶¶ 1C-1F. The Court refers to these defendants collectively as the "Individual Assignees."
[27] *Id.* at ¶ 7.
[28] Notice of Removal [Doc. 1]. The state court petition was served on SEA Eagle and Sundance on March 7, 2019. Accordingly, the removal was timely. Moreover, SEA Eagle and Sundance were not required to obtain consent from the other defendants because none had been served at the time of removal. *See* 28 U.S.C. § 1446 (b)(2)(A).
[29] Order Granting Motion to Substitute Party [Doc. 31].

if the forum state's long-arm statute confers personal jurisdiction over that non-resident defendant and if the exercise of personal jurisdiction satisfies the requirements of due process under the United States Constitution. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom et al*, 481 F.3d 309, 311 (5th Cir. 2007)). The reach of the Louisiana Long-Arm Statute is co-extensive with the limits of due process under the Constitution. *Petroleum Helicopters, Inc. v. Avco Corp. et al.*, 513 So. 2d 1188, 1192 (La. 1987). As a result, the jurisdictional analysis under the Louisiana Long-Arm Statute collapses into a single inquiry of whether the exercise of personal jurisdiction comports with due process. *Id.*; *see also In re Chinese-Manufactured Drywall Products Liability Litig.*, 753 F.3d 521, 546 (5th Cir. 2014).

Where, as here, the court decides a motion to dismiss for lack of personal jurisdiction without a hearing, the plaintiff need only demonstrate a prima facie basis for personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Johnston v. Multidata Systems, Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The plaintiff is not required to demonstrate personal jurisdiction by a preponderance of the evidence. *Wilson,* 20 F.3d at 648. A plaintiff can demonstrate a prima facie basis for personal jurisdiction through the allegations contained in the complaint. However, if the defendant disputes the factual grounds for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338, 344 (5th Cir. 2002). In judging whether a plaintiff has met his or her prima facie burden, a court must construe all uncontroverted allegations in the plaintiff's complaint as true. *Johnson*, 523 F.3d at 609. If the defendant controverts factual allegations in the complaint with affidavits or other evidence, the plaintiff cannot rest solely on the controverted allegations in the complaint but must counter the

defendant's evidence with affidavits or other evidence. *Conoco Phillips Co. v. Jump Oil Co.,* 948 F. Supp. 2d 1272, 1276 (N.D. Okla. 2013). Disputes in the parties' evidence must be resolved in the plaintiff's favor. *Johnson,* 523 F.3d at 609; *Kelly Law Firm, P.C. v. AN Attorney for You,* 679 F Supp. 2d 755, 762 (S.D. Tex. 2009).

Personal jurisdiction can be based on either "general jurisdiction" or "specific jurisdiction." *Haliburton Energy Services, Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 539 (5th Cir. 2019). Plaintiffs rely on both specific and general jurisdiction to establish personal jurisdiction over the Moving Defendants.

**B. General Jurisdiction**

A court can exercise general jurisdiction only when a party's "affiliations with the State are so continuous and systematic as to render [it] essentially *at home* in the forum state." *Daimler A.G. v. Bauman,* 571 U.S. 117, 134 S. Ct. 746, 761 (2014) (emphasis added). Based on this standard, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of the defendant. *Id.*; *Monkton Ins. Servs., Ltd. v. Ritter,* 768 F.3d 429, 432 (5th Cir. 2014) (citing *Daimler A.G.,* 134 S. Ct. at 761. Put another way, it would be an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation" subject to general jurisdiction "in that state." *Daimler A.G.,* 134 S. Ct. at 761 n.19.

Sundance, SEA Eagle and Noble Energy argue that there is no prima facie basis for the court to exercise general jurisdiction because they are not incorporated in Louisiana nor are their principal places of business located in Louisiana. Moreover, they contend that they do not have the "continuous and systematic" contacts with Louisiana to support general jurisdiction under the

*Daimler A.G.* standard. Plaintiffs rely primarily on the actions of Clayton Williams and Clayton Williams Energy to establish general jurisdiction. According to Plaintiffs, Clayton Williams traveled to Louisiana to meet with the Louisiana interest holders and negotiate the Libersat Lease. Plaintiffs also contend that Clayton Williams had "long standing business operations in Louisiana." According to Plaintiffs, Williams' contacts should be imputed to Sundance, SEA Eagle and Noble because, as assignees of Williams' lease interests, these defendants "stand in the shoes" of Williams and are solidarily liable with Williams on the lease.[30]

Plaintiffs have not established a prima facie basis to exercise general jurisdiction over Sundance, SEA Eagle and Noble Energy. The Moving Defendants were not formed or incorporated in Louisiana and do not maintain their principal places of business in Louisiana. Sundance Energy is a Colorado corporation with its principal place of business in Denver, Colorado. SEA Eagle is a Texas limited liability company with its principal place of business also located in Denver, Colorado. SEA Eagle's sole member is Sundance, so none of its members are located in Louisiana.[31] Noble Energy is a Delaware corporation and its principal place of business is located in Houston, Texas.[32] Sundance and SEA Eagle also have no offices, shareholders, directors, officers, or employees who reside in the state of Louisiana, nor do they own or lease any assets or property located in Louisiana.[33] Moreover, Sundance's actions in sending division orders, royalty payments and other communications to interest holders in Louisiana do not qualify as the "continuous and systematic contacts" that essentially render Sundance and SEA Eagle "at home" in Louisiana. *Daimler A.G.*, 134 S. Ct. at 761.

---

[30] Plaintiffs' opposition to Sundance/SEA Eagle Motion to Dismiss at 3 [Doc.11-3].
[31] Wolfe Affidavit at ¶¶ 1-3 [Doc. 8-5].
[32] Pullins Declaration [Doc. 23-2].
[33] Wolfe Affidavit at ¶¶ 8-14 [Doc. 8-5].

With respect to Noble Energy, Plaintiffs argue that Noble is "licensed" to do business in Louisiana, that it does business in Louisiana, and that it has been the subject of ten (10) lawsuits in Louisiana from 2011 to 2017.[34] Plaintiffs' Complaint and their Opposition to Noble Energy's Motion to Dismiss, however, do not go beyond conclusory assertions that Noble does business in Louisiana; they do not detail the extent or nature of Noble's business operations in Louisiana or show how these operations rise to the level of the continuous and systematic contacts required for general jurisdiction. The fact that Noble was licensed to do business in Louisiana and was a party to lawsuits in Louisiana from 2011 to 2017 is evidence that Noble did business in Louisiana. Transacting business in Louisiana, however, is not the same as having connections that are so substantial that Noble is essentially "at home" in Louisiana without more information on the nature and extent of Noble's business dealings in Louisiana. *Daimler A.G.*, 134 S. Ct. at 761. As the Supreme Court emphasized in *Daimler A.G.*, it is an "exceptional case" where a court would have a general jurisdiction over a non-resident defendant who is not incorporated in the forum and does not have its principal place of business in the forum. *Id.*

Nor can Plaintiffs base general jurisdiction over Sundance, SEA Eagle, and Noble Energy on the contacts of Clayton Williams or other parties with the state of Louisiana. Plaintiffs' imputation argument is based on the 2014 assignment of the Libersat Lease to SEA Eagle by Eagle Ford Shale.[35] According to Plaintiffs, even though these three defendants did not sign the original lease "by operation of law they stand in the shoes of Clayton W. Williams, Jr., the original lessee who is subject to this court's jurisdiction; both general and specific."[36]

---

[34] Plaintiffs' Opposition to Noble Motion to Dismiss at 2-3 [Doc. 26].
[35] Plaintiff's Memorandum in Support of their Opposition to the Sundance/SEA Eagle Motion to Dismiss ("Plaintiff's Opposition to Sundance/SEA Eagle Motion") at 3 [Doc. 11-1].
[36] *Id.*

Courts generally "must assess each defendant's contact with a forum state individually--a substantial connection is not formed by the 'unilateral activity of another party or a third person.'" *Haliburton*, 921 F.3d at 543. The Fifth Circuit has held that courts can impute the forum contacts of a predecessor company to a successor corporation that is a "mere continuation" of the predecessor. *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002). The court has also held that the authorized actions of an agent may be imputed to that agent's principal. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 533 (5th Cir. 2014); *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009).[37] Similarly, the court has allowed a plaintiff to impute the jurisdictional contacts of parties who are alter egos. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010) ("A court which has jurisdiction over a corporation has jurisdiction over its alter egos.") (quoting *Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1265 (5th Cir. 1985)).

Plaintiffs, however, have not alleged any facts or put forward any evidence showing that Sundance and SEA Eagle are successor corporations, agents, or alter egos of Clayton Williams or Clayton Williams Energy.[38] Rather, Plaintiffs contend that SEA Eagle and Sundance are "solidary obligors" with Clayton Williams and Clayton Williams Energy with respect to the Libersat Lease as a result of the 2014 assignment. They then argue that this solidary obligation permits the Court to impute Clayton Williams' contacts with Louisiana (including contacts occurring almost 30 years prior to the 2014 lease assignment) to SEA Eagle and Sundance. The flaw in this argument is that a contractual assignment alone is not a basis for imputing jurisdictional contacts. *See Haliburton*,

---

[37] The Supreme Court, however, has questioned whether imputation based on an agency relationship satisfies due process under general jurisdiction. *Daimler A.G.* Even with respect to specific jurisdiction, the Court noted that not all agency relationships would support imputing the jurisdictional contacts of an agent. *Id.*

[38] Plaintiffs refer to "potential agency issues" with respect to Sundance but this appears to refer to Sundance's relationship with SEA Eagle, not Clayton Williams. *See* Plaintiff's Opposition to Sundance/SEA Eagle Motion at 1,7 [Doc. 11-1]. Plaintiffs also point to no specific factual allegations or evidence showing such a relationship under Louisiana law.

921 F.3d at 543; *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) ("[A]n assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction."); *Administrators of Tulane Educ. Fund v. Biomeasure, Inc.*, 687 F. Supp. 2d 620, 631 (E.D. La. 2009) (declining to impute jurisdictional contacts to an assignee); *Allied Prof's Ins. Co. v. Harmon*, No. 8:16-cv-1864, 2017 WL 5634861, at *4 (C.D. Cal. March 7, 2017) ("The contacts of a contracting party are not imputed to an assignee or a third party beneficiary under a minimum contact analysis."). The rationale for imputing the jurisdictional contacts among corporate successors or alter egos is that they "are the *same entity*" and, accordingly, "the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin*, 294 F.3d at 653. (emphasis in original). The same rationale does not apply to assignments or solidary obligors. Plaintiffs point to no jurisprudence holding that solidary obligors are deemed "the same entity" for purposes of personal jurisdiction. *Id.* The mere fact that a party is a solidary obligor does not strip away that party's separate corporate existence absent an alter ego finding or other grounds to pierce the corporate veil.

Here, the connection is even more tenuous because SEA Eagle is not even a direct assignee of Clayton Williams: SEA Eagle is an assignee of Eagle Ford Shale who, in turn, was an assignee of Clayton Williams Energy. Sundance, in contrast, has no interest in the Libersat Lease. Imputing the contacts of Clayton Williams or Clayton Williams Energy to Sundance and SEA Eagle under these circumstances is inconsistent with due process. *Daimler A.G.*, 134 S. Ct. at 761; *Haliburton*, 921 F.3d at 543.

Noble Energy presents a different case. Plaintiffs' pleadings suggest that Noble Energy is a corporate successor to Clayton Williams Energy, and Noble has not come forward with any

evidence to refute that characterization. If Noble Energy is a corporate successor, the jurisdictional contacts of Clayton Williams Energy could apply to Noble under *Patin*. 294 F.3d at 654. The jurisdictional contacts cited by Plaintiffs are Clayton Williams' actions in Louisiana in connection with the negotiation and execution of the Libersat Lease in 1984 and their allegation that Clayton Williams had "longstanding business operations in Louisiana."[39] Contacts arising from the negotiation and execution of the Libersat Lease thirty years ago, however, are not the "continuous and systematic" contacts required for general jurisdiction. *Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding no general jurisdiction in Texas despite evidence that the defendant regularly sent salespeople to Texas to develop business, negotiate contracts, and service national accounts); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008) ("Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction.") (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir.2007)). Nor is it sufficient to merely allege "longstanding business operations" in Louisiana without detailing the nature of those operations and showing that those operations rise to the level of the "continuous and systematic" affiliations required for general jurisdiction. Without these jurisdictional facts, Plaintiffs have not shown that Clayton Williams' or Clayton Williams Energy's contacts with Louisiana were so pervasive that they were essentially "at home" in Louisiana. *Daimler A.G.*, 134 S. Ct. 746 at 761. There is no evidence that Clayton Williams Energy is a Louisiana entity or that either Clayton Williams or Clayton Williams Energy maintained their principal place of business in Louisiana. Accordingly, Plaintiffs cannot maintain general jurisdiction over Noble Energy through the jurisdictional contacts they attribute to Clayton Williams or Clayton Williams Energy.

---

[39] Plaintiffs' Opposition to Sundance/SEA Eagle Motion to Dismiss at 3 [Doc. 11-1].

In sum, Plaintiffs have not demonstrated that this case is the "exceptional case" required to exercise general jurisdiction over the Moving Defendants given that they are not Louisiana entities and do not maintain their principal places of business in Louisiana. *Daimler A.G.*, 134 S. Ct. at 761 n.19.

## C. Specific Jurisdiction

A court may exercise specific jurisdiction over a defendant even if that defendant's contacts with the forum are not sufficient to give rise to general jurisdiction if the plaintiff's claims "arise out of" or are "related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The Fifth Circuit follows a three-step inquiry into specific jurisdiction. First, a court must determine whether a defendant has "minimum contacts" with the forum state. *Nuovo Pignone, S.p.A v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir. 2002). In assessing a defendant's minimum contacts, courts look to whether the defendant "purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* Second, a court must determine whether a plaintiff's claims arise out of or result from these forum-related contacts. *Id.* Third, the court must determine "whether the exercise of personal jurisdiction is fair and reasonable." *Id.*

Plaintiffs again rely Clayton Williams' contacts with Louisiana to establish specific jurisdiction over the Moving Defendants. Plaintiffs also allege contacts involving royalty payments sent by Sundance and SEA Eagle to Plaintiffs and other interest holders in Louisiana, as well as their actions in sending division orders and other communications to Plaintiffs in Louisiana. According to Plaintiffs, the Moving Defendants directed their activities toward Louisiana and their withholding of royalty payments to the Plaintiffs had its impact in Louisiana.[40]

---

[40] Plaintiffs' Opposition to Sundance/SEA Eagle Motion to Dismiss at 12-14 [Doc. 11-1].

As in the case of general jurisdiction, Plaintiffs cannot impute Clayton Williams' contacts with Louisiana to Sundance and SEA Eagle to establish specific jurisdiction. The record does not support a finding that Sundance or SEA Eagle were successor corporations, principals or agents, or alter egos of Clayton Williams or Clayton Williams Energy. With respect to Noble Energy, Plaintiffs may be able to rely on the Louisiana contacts of Clayton Williams and Clayton Williams Energy to establish jurisdiction. However, the minimum contacts required for specific jurisdiction are *claim specific*. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). In other words, a plaintiff's claims must arise out of the jurisdictional contacts with the forum. *Id.* Here, Plaintiffs' claims arise out of royalty payments and alleged errors in division orders occurring after the 2014 lease assignment, not Clayton Williams' or Clayton Williams Energy's actions in negotiating and executing the Libersat Lease thirty years earlier. Indeed, Plaintiffs acknowledge that "[a]t this time petitioners have no information that defendants Clayton W. Williams, Jr., and/or Noble Energy, Inc., have breached their obligation to perform in good faith as a prudent operator, but are necessary parties to this action."[41] Accordingly, because Plaintiffs' claims do not arise out of the jurisdictional contacts of Williams or Clayton Williams Energy, these contacts cannot be grounds to exercise specific jurisdiction over Noble Energy even though Noble may be the successor to Clayton Williams Energy.

On the other hand, the Louisiana contacts that are relevant to Plaintiffs' claims are the royalty payments, division orders, and communications sent to Plaintiffs and other interest owners located in Louisiana. The record, however, is unclear as to which Moving Defendant these contacts pertain. Plaintiffs refer to Sundance, SEA Eagle, and the Individual Assignees

---

[41] *Id.* at ¶ 7.

collectively as "Sundance."[42] Plaintiffs also appear to group Noble Energy with Sundance and SEA Eagle without showing a connection between the royalty payment dispute and Noble. Not only can Williams' contacts not be imputed to Sundance and SEA Eagle, the jurisdictional contacts of some defendants cannot be imputed to any other defendant absent one of the exceptions recognized by the Fifth Circuit.

Viewing the record in the light most favorable to Plaintiffs, it appears that Sundance had the primary role in sending royalty payments and division orders to Plaintiffs and other interest holders in Louisiana.[43] It also appears from the record that SEA Eagle was involved in researching the interest holders in the Libersat Lease and the title opinion.[44] The record also reflects Plaintiffs' allegations that Noble Energy is registered to do business in Louisiana and was a party to at least ten lawsuits over five years. Accordingly, the Court will focus on these Louisiana contacts and the relationship between these contacts and Plaintiffs' claims.

The existence of a contractual relationship with a resident of the forum state is usually insufficient to establish the necessary minimum contacts for specific jurisdiction. *See TH Agriculture & Nutrition LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007). In order to establish the necessary minimum contacts, the contract must have a "substantial connection" with the forum state. *Id.* The Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of [a] contract, and the existence of a contract between the non-resident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support

---

[42] Complaint at¶ 10 (Defining "Sundance Energy, SEA Eagle Ford, Moore, Graham, Shepard, and Sowell" as "collectively Sundance.").

[43] *See, e.g.,* Wolfe Affidavit at ¶ 24 [Doc. 8-5] ("Sundance coordinates the logistics of royalty payments under the Lease, including payments to Plaintiffs.")

[44] *See* Exhibit C to the Sundance Motion at ¶ 8 [Doc. 8-4] ("SEA researched title to the Subjected Property....").

exercise of specific jurisdiction over the non-resident defendant." *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344-45 (5th Cir. 2004) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). In *Freudensprung*, the plaintiff submitted evidence that an out-of-state defendant contracted with a party residing in the forum state, "initiated and contemplated a long-term business relationship" with the party located in the forum, communicated with that party "concerning the development and execution of the contract," and wired money to the party located in the forum state. 379 F.3d at 345. The *Freudensprung* court held that these contacts were insufficient to confer specific jurisdiction. *Id.*

Here, the Louisiana contacts cited by Plaintiffs relate primarily to Sundance. Specifically, Plaintiffs allege that Sundance sent royalty payments, division orders, and communications related to those royalty payments and division orders to Plaintiffs in Louisiana. These royalty payments and division orders related to a Texas mineral lease involving land and mineral production in Texas. There is no substantial connection between this Texas mineral lease and Louisiana other than the fact that Plaintiffs are located in Louisiana. Under *Freudensprung*, however, evidence that royalty payments, division orders, and other communications were sent to Plaintiffs in Louisiana is not sufficient for specific jurisdiction. 379 F.3d at 344-45.[45] With respect to Noble Energy's contacts in Louisiana, these contacts would be sufficient for specific jurisdiction if Plaintiffs' claims arose from those contacts. However, there is no showing that Plaintiffs' claims

---

[45] At one point, Plaintiffs suggest that their claims are based on a "Louisiana contract." *See* Complaint at ¶ 2 [Doc. 1-1] ("This is an action on a Louisiana contract...."). It is unclear which contract plaintiffs are referring to as a Louisiana contract. Plaintiffs suggest that, because royalty payments were sent to interest holders in Louisiana, the Libersat Lease somehow morphed into a Louisiana mineral lease. The Court disagrees. The Libersat Lease involves real property interests and the production of oil and gas in Texas and was filed in the deed records of McMullen County, Texas. To the extent Plaintiffs are relying on the 2014 assignment of the Libersat Lease to SEA Eagle, this assignment was executed in Texas and Colorado and contains a choice of law clause requiring the application of Texas law. *See* Wolfe Affidavit at ¶ 22. [Doc. 8-5]; Exhibit B to the Sundance/SEA Eagle Motion to Dismiss at ¶ 7 [Doc. 8-3]. The assignment was also filed in the deed records of McMullen County, Texas. Finally, the division orders sent to Plaintiffs and other Louisiana-based interest owners pertained to a Texas mineral lease.

arose out of Noble's jurisdictional contacts. The Complaint lacks any allegation connecting Noble Energy to the disputed royalty payments; indeed, it acknowledges that Plaintiffs "have no information" that Noble breached its obligations to Plaintiffs.[46]

In sum, Plaintiffs have not met their burden of showing a prima facie case that the Moving Defendants have sufficient minimum contacts with the state of Louisiana. As a result, the Court need not address the remaining two prongs of the Fifth Circuit's specific jurisdiction analysis. The Court grants the Sundance/SEA Eagle Motion to Dismiss and the Noble Motion to Dismiss on the grounds that the court lacks personal jurisdiction over the Moving Defendants.

## III.
### THE LOCAL ACTION DOCTRINE

The Moving Defendants further argue that the "Local Action Doctrine" bars a Louisiana federal court from hearing a case that seeks to adjudicate title to real property located in Texas. The Local Action Doctrine requires that "a local action involving real property can only be brought within the territorial boundaries of the state where the land is located." *Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710, 721-22 (5th Cir. 2010) (quoting *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987). Most courts cite Chief Judge John Marshall's 1811 opinion in *Livingston v. Jefferson*, 15 F. Cas. 660 (C.C.D. Va. 1811) (No. 8411) as one of the earliest examples of a federal court applying the common law Local Action Doctrine.[47] At first blush, the modern form of the Local Action Doctrine more closely resembles a venue rule. But the doctrine is actually a limitation on a federal court's subject matter jurisdiction. *See Spann v. Select Portfolio Servicing, Inc.*, 17-cv-299, 2017 WL 3279365, at *2 (N.D. Tex. July 11, 2017) (citing *Boaz Legacy, L.P. v. Roberts*,

---

[46] Complaint at ¶ 7.
[47] In *Livingston*, Edward Livingston sued former President Thomas Jefferson in a federal court in Virginia for an alleged trespass to land in Louisiana. The court dismissed the action since an action for trespass to land in Louisiana was local and could not be heard in a Virginia court. *Hayes*, 821 F.2d at 287.

628 Fed. Appx. 318, 319 (5th Cir. 2016)). Thus, the doctrine may preclude jurisdiction over a local action even if the requirements for diversity jurisdiction are otherwise met. *Id.* Unlike traditional abstention doctrines, the law of the forum state– here, Louisiana –governs the applicability of the Local Action Doctrine in a federal court proceeding. *Trust Co. Bank v. U. S. Gypsum Co.*, 950 F.2d 1144, 1148-50 (5th Cir. 1992) (citing *Hayes*, 821 F.2d at 288, and *Chateau Lafayette Apartments, Inc. v. Meadow Brook National Bank*, 416 F. 2d 301 (5th Cir. 1969)). There is some confusion over whether Louisiana courts have recognized the Local Action Doctrine. *See Sims v. Riverland Prop., LLC*, No. 16-cv-0550, 2016 WL 3976416, at 1-2 (W.D. La. May 4, 2016) (discussing the conflicting views on whether Louisiana courts have adopted the doctrine). One decision indicates that the Louisiana Supreme Court has rejected the doctrine. *Id.* (citing *U. S. Gypsum Co.*, 950 F.2d at 1149). Other courts have proceeded as though the doctrine applies in Louisiana. *See Weeks, Kavanagh & Rendeiro v. Blake*, No. 01-0897, 2001 WL 803726, at *4-5 (E.D. La. July 16, 2001). Even assuming Louisiana has adopted the Local Action Doctrine, application of the doctrine turns on whether a claim is truly "local" or merely "transitory." *Id.* Contract and tort claims are generally considered transitory actions, while questions over title to land are local actions. *Id.*; *Bailey*, 609 F.3d at 721-22; *Keller v. Millice*, 838 F. Supp. 1163, 1172 (S.D. Tex. 1993).

Plaintiffs contend that the present case is a *transitory* action because it does not involve questions of title or ownership in land. Rather, they assert that their claims are purely contract claims grounded in the miscalculation of their royalty payments and Sundance's and SEA Eagle's conduct with respect to those payments. The Fifth Circuit's opinion in *Bailey* supports this argument. 609 F.3d at 721-22 (dispute over royalty payments was a transitory action). On the

other hand, Plaintiffs are seeking judicial dissolution of the Libersat Lease.[48] In *Hayes*, the plaintiff similarly sought termination of a mineral lease. *Hayes*, 821 F.2d at 288. The court characterized this claim as a local action, not a transitory contract action, because the request to terminate the lease was "an action to try title to real property" in another state. *Id.* The claims here do not appear to fall neatly into either category.

The Court need not decide whether Louisiana has adopted the Local Action Doctrine or whether Plaintiffs' claims are local or transitory given the Court's ruling on personal jurisdiction. If this action is a local action, the remedy is the same as granting the motion to dismiss for lack of personal jurisdiction: dismissal or transfer. If the action is transitory, the matter can be heard "in any court where *personal jurisdiction* over the defendant may be properly asserted." *Keller*, 838 F. Supp. at 1173. Here, the Court has concluded that it lacks personal jurisdiction over the Moving Defendants. Accordingly, even if the action is transitory, the claims against the Moving Defendants are subject to dismissal or transfer for lack of personal jurisdiction.

## IV.
### DISPOSITION

The Moving Defendants request dismissal or, in the alternative, that the case be transferred to the United States District Court for the Southern District of Texas, Laredo Division. As a threshold matter, Plaintiffs argue that the case should not be dismissed or transferred at this time. They contend that a personal jurisdictional ruling is "premature" and should be deferred until the completion of discovery. "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000) (citation omitted). To obtain jurisdictional discovery,

---

[48] Complaint at ¶ 30 (requesting "judicial cancellation" of the Libersat Lease).

a plaintiff must "specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014). Here, Plaintiffs point out that "discovery is unanswered," that "disclosures made in the defendants' motion indicate that there are other necessary parties to be joined in this proceeding," and that the "revelation that Sundance has been named as a defendant in Sea Eagle's Texas suit also indicates potential agency issues."[49] This showing is insufficient to obtain jurisdictional discovery. First, Plaintiffs have not identified specific discovery that they intend to conduct, and how the facts obtained through that discovery would support personal jurisdiction. *Evergreen Media*, 68 F.Supp. 3d at 672. Even if Sundance and SEA Eagle had an agency relationship, the result would be that the jurisdictional contacts of one may be imputed to the other. Even under this scenario, the contacts of Sundance and SEA Eagle taken together would not satisfy the requirements for general or specific jurisdiction. Second, Plaintiffs have not stated a plausible case for personal jurisdiction even under the liberal "prima facie" review applied here. Accordingly, the Court denies Plaintiffs' request to delay a decision on personal jurisdiction pending additional discovery.

Where, as here, a court concludes that it lacks personal jurisdiction over the defendant, the court may dismiss the action or transfer the action to any district where it could have been originally brought. *See TransFirst Group, Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 456 (N.D. Tex. 2017). 28 U.S.C. § 1631 provides that if a court finds that "there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed...." Here, the interest of justice does not support transfer. First, there is a prior pending Texas state court action in

---

[49] Plaintiffs' Opposition to Sundance/SEA Eagle Motion to Dismiss at 1 [Doc. 11-1].

McMullen County that involves the same lease and arises from the same set of facts as the present case. This Texas state court case was filed almost five months before Plaintiffs filed the present action in Vermillion Parish. The Moving Defendants contend that Plaintiffs could have intervened in the prior pending Texas action but instead filed a separate action in Louisiana. Second, the pending motions only address three of the eight defendants. The Court is reluctant to transfer the entire case under section 1631 absent a motion and a record with respect to the remaining defendants. While the Court could sever the Moving Defendants and transfer the severed case to the Southern District of Texas, that would result in a multiplicity of actions addressing the same mineral lease and operative facts: two identical federal court cases (one in Louisiana and one in Texas) and the pending state court case in McMullen County. Accordingly, the "interest of justice" does not support transferring this case to the Southern District of Texas. Plaintiffs' claims against the Moving Defendants are therefore dismissed without prejudice.

## V.
### CONCLUSION

For the foregoing reasons, the court **GRANTS** the Sundance/SEA Eagle Motion to Dismiss [doc. 8] and the Noble Motion to Dismiss [doc. 23] under Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Court lacks personal jurisdiction over Sundance, SEA Eagle, and Noble Energy. Accordingly, the Court orders that the claims against Sundance, SEA Eagle, and Noble Energy be **DISMISSED** without prejudice.

**THUS DONE** and signed in Lafayette, Louisiana on this ___31st___ day of January, 2020

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE