# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

November 17, 2020

Mr. Tony R. Moore
Western District of Louisiana, Lafayette
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

    No. 20-30121    Gerald Libersat, et al v. Sundance Energy
                            Incorporated, et al
                            USDC No. 6:19-CV-421

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                      Sincerely,

                                      LYLE W. CAYCE, Clerk

                                      By: _____
                                      Whitney M. Jett, Deputy Clerk
                                      504-310-7772

cc:
    Ms. Sarah Katherine Casey
    Mr. Roger Chadwick Edwards Jr.
    Mr. Kenneth M. Klemm
    Mr. Gary Langlois Jr.
    Mr. Justin Paul Lemaire

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 26, 2020

Lyle W. Cayce
Clerk

No. 20-30121

_____

Julie Romero Libersat; Charles E. Scarbrough, Testamentary Executor of Succession of Gerald D. Libersat,

*Plaintiffs—Appellants*,

*versus*

Sundance Energy, Incorporated; Sea Eagle Ford, L.L.C.; Noble Energy, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:19-CV-421

_____

Before Smith, Clement, and Oldham, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

20-30121

IT IS FURTHER ORDERED that appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued
as the mandate on Nov 17, 2020**

**Attest:** *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 26, 2020
Lyle W. Cayce
Clerk

No. 20-30121

JULIE ROMERO LIBERSAT; CHARLES E. SCARBROUGH,
TESTAMENTARY EXECUTOR OF SUCCESSION OF GERALD D.
LIBERSAT,

*Plaintiffs—Appellants,*

versus

SUNDANCE ENERGY, INCORPORATED; SEA EAGLE FORD,
L.L.C.; NOBLE ENERGY, INCORPORATED,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:19-CV-421

Before SMITH, CLEMENT, and OLDHAM, *Circuit Judges*.
EDITH BROWN CLEMENT, *Circuit Judge*:

Plaintiffs Gerald Libersat and Julie Romero Libersat (jointly, "Libersat") sued Sundance Energy, Inc., SEA Eagle Ford, L.L.C., and Noble Energy, Inc., among others, for royalties pursuant to a Texas mineral lease. Libersat alleges that the defendants negligently calculated royalty distributions and attempted to coerce Libersat to sign an indemnity agreement when the error was brought to their attention. The district court

dismissed all claims against Sundance, SEA Eagle, and Noble without prejudice for lack of personal jurisdiction. We AFFIRM.

## I. Facts and Proceedings

In 1984 Clayton Williams, Jr., leased the mineral rights to property in McMullen County, Texas, owned by the Libersat family, who lived in Louisiana. Williams then assigned his rights to Clayton Williams Energy, Inc. Some of those rights (the portion at issue here) were assigned to Eagle Ford Shale Exploration, LLC, which, in turn, assigned them to SEA Eagle in 2014. In 2017, Noble acquired Clayton Williams Energy. Sundance is SEA Eagle's sole member and administers royalty payments for SEA Eagle, but has no direct interest in the lease.

In 2018 Sundance transmitted division orders proposing an allocation of royalties based on an allegedly faulty mineral title opinion. The division order allegedly allocated to Libersat only a 1/3 interest—based on faulty assumptions about how original lessor May Libersat's estate had been passed down—when Libersat should have been allocated a 2/3 interest. The other 1/3 was incorrectly allocated to third parties, who allegedly ratified and collected royalties based on the erroneous division orders.[1]

Libersat alleges that when he alerted Sundance to its error, Sundance responded by sending a corrected division order containing an indemnity clause that would have prevented Libersat from recovering several months' worth of misallocated royalties. When Libersat refused to sign this order, Sundance allegedly ceased *all* royalty payments as leverage to force Libersat to sign the indemnifying division order.

---

[1] SEA Eagle has sued Mark Libersat and Roxanne Marie Gilton—the third parties who allegedly collected the royalties to which Libersat is entitled—in Texas state court to recover the erroneous payments.

No. 20-30121

Libersat sued in Louisiana state court. SEA Eagle and Sundance removed the case to the Federal District Court for the Western District of Louisiana, then moved to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and improper venue. Shortly thereafter, Noble also moved to dismiss on similar grounds.

The district court found that none of the three defendants were sufficiently "at home" in Louisiana to justify general personal jurisdiction, nor did any have sufficient minimum contacts related to the cause of action to justify specific personal jurisdiction. So the district court dismissed without prejudice. The district court considered but declined to rule on the defendants' argument that the local action rule precluded subject matter jurisdiction. Libersat timely appealed.

## II. Standard of Review

We review a district court's decision to dismiss for lack of personal jurisdiction de novo. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). Although the plaintiffs bear the burden of establishing jurisdiction over the defendants, the plaintiffs are only required to make a prima facie showing because the district court did not hold an evidentiary hearing. *Johnston v. Multidata Sys. Int'l. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). We will accept as true the uncontroverted allegations in the complaint and resolve factual conflicts in favor of the plaintiffs. *Halliburton Energy Servs.*, 921 F.3d at 539.

## III. Discussion

"A 'federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute' allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Halliburton Energy Servs.*, 921 F.3d at 539 (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)). Because "[t]he limits of the Louisiana Long-

arm Statute and the limits of constitutional due process are" effectively "coextensive," *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1192 (La. 1987), the sole inquiry is whether exercising jurisdiction would violate the Due Process Clause, *see Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242–43 (5th Cir. 2008).

A court may exercise personal jurisdiction based on specific or general jurisdiction. Although Libersat argued to the district court that Louisiana courts could exercise personal jurisdiction based on either theory, he has since abandoned the general jurisdiction argument. This is wise, as Noble is a Delaware corporation with its principal place of business in Houston, Texas, Sundance is a Colorado corporation with its principal place of business in Denver, Colorado, and SEA Eagle is a Texas limited liability company with its principal place of business in Colorado and with Sundance as its sole member. No defendant has the type of continuous and systematic contacts with Louisiana that would "render [it] essentially at home in the forum State." *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Thus, we consider only specific jurisdiction. We use a three-step analysis that asks

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

No. 20-30121

A.

Before we can examine the defendants' alleged jurisdictional contacts, we must address Libersat's pervasive effort to join together all of the various defendants' contacts into a single corpus for consideration. To decide whether the defendants have sufficient minimum contacts, we must first decide *which* alleged contacts to consider for each defendant. Libersat argues that, because they are solidary obligors,[2] each defendant's respective contacts with Louisiana should be imputed to every other defendant. Libersat asks, "If two corporations are obligated for the same performance and can be judicially sanctioned for conduct related to said obligation irrespective of the presence of the other, are they not alter egos?"

No, they are not. Sharing liability is not the same as sharing an identity. As our colleagues in the Ninth Circuit explained, "Liability and jurisdiction are independent. . . . Regardless of their joint liability, jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Lumping defendants together for jurisdictional purposes merely because they are solidary obligors "is plainly unconstitutional." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Libersat's reliance on solidary liability arising specifically from the assignment of a lease is unavailing. Courts that have looked at assignor / assignee relationships have "determined that an assignee does not step automatically into the shoes of the assignor for purposes of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) (collecting cases).

---

[2] Solidary liability is Louisiana's civil-law analogue for joint and several liability. *In re Hari Aum, LLC*, 714 F.3d 274, 277 n.1 (5th Cir. 2013) (citing BLACK'S LAW DICTIONARY 1521 (9th ed. 2009)).

Without more, the Constitution does not permit us to impute the jurisdictional contacts of each defendant to all the others.

Although joint liability is not a permissible basis for imputing the jurisdictional contacts of one defendant to another, imputing contacts may be permissible where defendants form certain relationships. Libersat argues that the defendants may be linked via such relationships, including agency, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 534 (5th Cir. 2014), alter ego, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586–87 (5th Cir. 2010), or successor-entity relationships, *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653–54 (5th Cir. 2002). Purely for the sake of convenience, we will assume that some of these relationships may apply and thereby arrange the defendants into two groups.

It is far from clear that Libersat has alleged sufficient facts to find that Sundance is merely an alter ego of SEA Eagle. *See Jackson*, 615 F.3d at 587–88 (refusing to impute contacts among closely-affiliated entities where their "brands and products appear identical and their business relationships are deeply intertwined," and they shared office space, phone numbers, and directors). However, Sundance appears to have conducted business on behalf of SEA Eagle, including handling royalty payments, procuring the title opinion at issue, and communicating with lessors. Thus, for the sake of convenience, we will assume—without deciding—that SEA Eagle and Sundance can be treated collectively hereinafter as the "Sundance Defendants," which is the first group.

We also assume—without deciding—that Clayton Williams, Jr.'s, contacts can be imputed to Clayton Williams Energy (as alter egos), and then

No. 20-30121

on to Noble (as successor to Clayton Williams Energy).[3] This is the second group of entities whose contacts we will consider imputed to one another.

Libersat does not allege any facts to indicate that SEA Eagle and Sundance are connected to Noble or Clayton Williams Energy in any way beyond their respective involvement in the lease at issue—whether as agent, alter ego, or successor. There is no evidence or allegation of any relationship that would allow Clayton Williams's contacts to be imputed to Sundance, or Sundance's contacts to be imputed to Noble. Thus, there is no basis to impute any of the contacts of one group to the other.

B.

Having thus split defendants into two groups, we can now turn to the contacts that are attributable to each group to examine whether they are sufficient for specific personal jurisdiction.

(1)

Noble's alleged contacts with Louisiana include maintaining an active business presence in Louisiana, ratifying the Sundance Defendants' actions, negotiating the lease in Louisiana (imputed through Clayton Williams), and sending royalties for over 30 years to Louisiana.

Libersat's allegations about Noble's general business presence in Louisiana, including registering to do business and being involved in unrelated lawsuits, are inapposite. Libersat relies solely on a theory of specific

---

[3] Whether Noble is a "mere continuation" of Clayton Williams Energy, see *Patin*, 294 F.3d at 649, or Clayton Williams Energy can be treated as an alter ego of Clayton Williams, Jr., via a veil-piercing analysis is unclear, since neither Libersat nor the district court engaged in any substantial analysis along those lines. In any case, like the district court, we find that Libersat has failed to make the requisite showing of minimum contacts regardless, and so decline to engage in this analysis in the first instance.

No. 20-30121

jurisdiction, which requires that "the controversy arise[ ] out of or [ ] relate[ ] to the defendant[']s contacts with the forum state." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). By definition, none of the unrelated lawsuits or business connections Libersat offers are related to this lawsuit, so they are irrelevant to specific jurisdiction.

Libersat's allegation that Noble has somehow ratified Sundance's conduct is similarly unavailing. Ratification is an agency theory, whereby a person may be bound "if the actor acted or purported to act as an agent on the person's behalf." RESTATEMENT (THIRD) OF AGENCY § 4.03 (AM. LAW INST. 2006). Sundance is an assignee, not an agent of Noble; Sundance, so far as we can tell from the record here, has *never* "acted or purported to act as an agent" of Noble, in this or any other matter. Noble was never in a position to ratify any conduct by Sundance, nor is there reason to believe it did.

Finally, assuming—again, without deciding—that payments by Clayton Williams Energy or negotiations by Clayton Williams, Jr., can be attributed to Noble, we nonetheless conclude that there is no sufficient connection to the instant litigation. Specific jurisdiction is "a claim-specific inquiry." *Seiferth*, 472 F.3d at 274. Libersat's claim must "arise[ ] out of or result[ ] from" Noble's contacts with Louisiana. *Id.* at 271 (citation omitted). Clayton Williams Energy assigned its interest in the relevant portion of the lease to Eagle Ford Shale Exploration in 2014, which then assigned it to SEA Eagle. Noble acquired Clayton Williams Energy in 2017. The conduct at issue occurred in 2017–2018.

As the district court noted, Libersat's claims "arise out of royalty payments and alleged errors in division orders." There is no allegation of wrongdoing associated with Williams's negotiations in the mid-1980s and Libersat explicitly disclaimed any allegation that Noble had improperly

8

performed its duties under the lease.[4] Noble no longer had an interest in the relevant portion of the lease when the conduct at issue occurred. Libersat's claims do not arise out of the negotiations and past royalty payments,[5] so Libersat cannot use Clayton Williams's interactions with the Libersat family to establish minimum contacts for specific personal jurisdiction in this case.

None of Noble's alleged contacts imputed through Clayton Williams, Jr., or Clayton Williams Energy are meaningfully related to Libersat's claims. Libersat has thus failed to allege that Noble has the requisite minimum contacts for Louisiana courts to exercise specific personal jurisdiction.

(2)

By contrast to Noble, the Sundance Defendants have at least some contacts with Louisiana that are related to Libersat's claims. The question remains, however, whether these contacts suffice for the "purposefully established 'minimum contacts' in the forum State" that are "the constitutional touchstone" of personal jurisdiction. *Asahi Metal Indus. Co., v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). This, in turn, requires that the contacts evince some intent by the defendant to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. at 109 (quoting *Burger King*, 471 U.S. at 475).

---

[4] The only allegation related to Noble's performance is that Noble should have intervened to prevent or correct Sundance's conduct, but nothing in the record would permit us to find that Noble had any such duty or any ability to affect Sundance's conduct.

[5] Even if they did, "merely contracting with a resident of the forum state does not establish minimum contacts." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

No. 20-30121

Because we decline to impute the contacts of unrelated entities to the Sundance Defendants, their only relevant contacts are (1) contracting to assume a Texas mineral lease associated with a Louisiana lessor, (2) sending an unknown number of payments to Louisiana (far fewer than the 30 years' worth alleged by Libersat, since the lease was assigned to SEA Eagle in 2014), and (3) sending division orders and communications about the lease to Libersat in Louisiana.

On the other hand, the Sundance Defendants acquired the lease from a Texas company, for mineral rights on land in Texas, all documentation of which was recorded in Texas, for the purpose of operating wells and extracting resources in Texas. The assignment from Eagle Ford Shale to SEA Eagle specified that the assignment would be governed by Texas law, and the original lease between Williams and the Libersats did not include any choice of law provision to counter the expectation that Texas law would control. The primary activities contemplated by the contract were carried out in Texas, and administration of the contract (sending of payments, etc.) was done in Colorado.

The Sundance Defendants' limited contacts with Louisiana are insufficient to show that they "purposefully availed [themselves] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986).

"The 'purposeful availment' element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010). None of the Sundance Defendants' activities in assuming a Texas lease to conduct activities in Texas suggest an

No. 20-30121

intention to purposefully avail themselves of the privilege of conducting activities in Louisiana or to invoke the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The fact that the landowner to whom royalty checks were due happened to reside in Louisiana is, itself, the type of fortuitus connection to the proposed forum that this court has repeatedly held is not sufficient for specific personal jurisdiction.

This court's holding in *Holt Oil & Gas Corp.* is particularly instructive. There, the defendant's contacts with the forum (Texas) included (1) entering into a contract with a Texas corporation, (2) sending joint operating agreements to Texas, (3) sending checks to Texas, and (4) engaging in "extensive telephonic and written communication" with the Texan plaintiff. 801 F.2d at 777–78. Those contacts were insufficient. *Id.* at 778; *see also Freudensprung*, 379 F.3d at 344 ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution of and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish [ ] minimum contacts[.]").

Similarly, the Sundance Defendants (1) assumed a contract with a Louisiana resident, (2) sent division orders to Louisiana, (3) sent checks to Louisiana, and (4) engaged in written communication with the plaintiffs, who lived in Louisiana. Without more, a court may not constitutionally exercise specific personal jurisdiction.

In a final bid to provide that something more, Libersat alleges the Sundance Defendants have committed an intentional tort that, by harming him in Louisiana, provides a sufficient contact with Louisiana. *See Calder v. Jones*, 465 U.S. 783, 791 (1984). Libersat's argument misunderstands the "effects theory" of *Calder* and its progeny. As the Supreme Court would later clarify, the "proper question is not where the plaintiff experienced a

11

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The defendants in *Calder* had not established contacts with California because they caused harm there; they had established contacts with California by sending communications to California *the very content of which was tortious* (a libelous article). *Calder*, 465 U.S. at 788–89; *see also Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the *actual content of communications* with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." (emphasis added)).

Here, Sundance's communications relate to a contract dispute and are not themselves tortious. The intentional tort alleged is conversion, and "'the wrongful exercise of dominion and control over another's property' must occur in the forum state" to establish personal jurisdiction. *Jones v. Artists Rights Enf't Corp.*, 789 F. App'x 423, 427 (5th Cir. 2019) (quoting *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 229 (5th Cir. 2012). Libersat alleges that a Colorado company is wrongfully exercising dominion and control over money that belongs to him—in Colorado. The "effects theory" is not applicable here and cannot add anything to the set of contacts already examined and found to be constitutionally inadequate to establish specific personal jurisdiction.

## IV. Conclusion

The district court correctly found that the defendants do not have sufficient minimum contacts with the state of Louisiana to support an exercise of specific personal jurisdiction. The district court's order is AFFIRMED.